UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DUANE JENNINGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:06-cv-0877-SEB-TAB |
| ) | |
| FORD MOTOR COMPANY, and FORD ) | |
| MOTOR COMPANY d/b/a ACH, LLC., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.      Introduction.**

Plaintiff Duane Jennings claims that Defendants Ford Motor Company and Automotive Components Holdings, LLC ("ACH") denied him overtime because he exercised his right to take medical leave under the Family Medical Leave Act. Plaintiff's case rests largely upon statements allegedly made by supervisors. Defendants seek to exclude these statements from evidence in conjunction with their motion for summary judgment [Docket Nos. 59, 73]. For the reasons set forth below, the Magistrate Judge finds that these statements would be admissible, and recommends that Defendants' motion for summary judgement [Docket No. 59] be denied.

**II.     Admissability of contested statements.**

In his response to Defendants' motion for summary judgment, Plaintiff relies heavily upon statements attributed to Denise Jerrell, the Area Manager of Plaintiff's department, and Ashley Ryan, Plaintiff's supervisor. The primary sources for these statements are an affidavit provided by Dave Newton, who was a supervisor under Jerrell during the time of the alleged

incidents but was no longer employed by Visteon at the time he provided the affidavit, and the deposition testimony of Jamie Sims, an hourly employee of Ford.

Defendants argue that these statements are inadmissible hearsay that do not fall under any of the hearsay exceptions and are not statements made by the party opponent. In support of the argument that these statements are not made by a party opponent, Defendants contend that neither Newton nor Sims had authority to speak on Ford's behalf.

However, Plaintiff correctly points out in his surreply that the status of Newton and Sims is inconsequential. The relevant inquiry in determining whether a statement is not hearsay because it is made by a party opponent is the status of the person to whom the statements are attributed, not the person repeating the statements. Both Jerrell and Ryan are employed by non-party Visteon Corp,[1] which arguably acts as an agent for Ford by managing Ford's employees on Ford's behalf, and as an agent for ACH by managing the operation of the plant owned by ACH. Thus, "a vendor on the floor of the plant, or even the milkman for that matter, may testify as to what he or she heard Jerrell or Ryan say." [Docket No. 77 at 5.] Therefore, these statements, made by employees of Visteon in their representative capacities of Visteon and arguably for Ford and ACH, do not fall within the definition of hearsay according to Federal Rule of Evidence 801(d)(2). Accordingly, some of these contested statements are incorporated in the background set forth below, which is written such that all facts and reasonable inferences are construed in favor of Plaintiff. *See Mote v. AETNA Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir.

---

[1] While originally Visteon Corporation was a named Defendant, on October 31, 2007, the parties stipulated to the dismissal of all claims against Visteon Corporation. [Docket No. 54 at ¶ 1.] The parties also stipulated to the dismissal of all claims against Ford and ACH that pre-date October 1, 2005. [*Id.* at ¶ 2.]

2007).

### III.   Background.

Plaintiff Duane Jennings is an employee for Ford at the ACH Plant in Indianapolis, IN ("the Plant").  The Plant is governed by local union agreements, [*see* Docket No. 59, Ex. 3], under which employees with the least number of accumulated overtime hours within a department are given priority when overtime hours are offered.  If it is necessary for employees from another department to be asked to work overtime, all employees in the other department are to be asked, with low overtime hour employees given priority, before employees from subsequent departments are asked.  In tracking the number of overtime hours for each employee, employees are charged for overtime hours that they have been offered in their home department but have refused.  All weekend hours are considered overtime hours, regardless of the number of hours the employee worked during the week.

On February 23, 2005, Plaintiff provided a form signed by his doctor indicating that Plaintiff may need to miss work two to three days per month due to chronic bronchitis and seasonal/environmental allergies.  [Docket No. 59, Ex. 4.]  On December 22, 2005, Plaintiff provided an updated FMLA form indicating that he may need to miss three to four days per month due to his condition.  [Docket No. 59, Ex. 5.]  Plaintiff took three days of FMLA leave in October, November, and December, and Plaintiff took at least four days of FMLA leave in January, February, and March.[2]

In 2005, attendance was a serious issue in Plaintiff's department.  During this period, Denise Jerrell was the Area Manager.  According to Dave Newton, a supervisor under Jerrell,

---

[2] *See infra* note 5.

Jerrell instructed him and two other supervisors—Dean Durbin and Ashley Ryan—to deny overtime to employees who did not work Monday through Friday for any reason, including if the employee took FMLA leave.

Durbin could not recall whether the directive had been made.  However, Plaintiff's co-worker Jamie Sims testified that sometime during 2005, Durbin related that Jerrell had told Durbin and several other supervisors that if anyone failed to work during the week, they would not get overtime on the weekends.[3]  Sims testified that Durbin was upset about this and told Sims that supervisor Newton had told Jerrell that doing this was a violation of the FMLA.  Jerrell responded by saying that employees could "grieve it."  [Docket No. 68, Newton Aff. at ¶ 8.] Sims further said that Durbin was agitated because Jerrell was upset with him for not writing up an employee for taking FMLA and for letting that employee work weekend hours.  Plaintiff similarly testified that Durbin told him about Jerrell's directive in July or August of 2005, which Plaintiff said was confirmed to him by Newton.

From August through mid-December 2005, Ryan was Plaintiff's supervisor.  Ryan told his line in weekly meetings that departments with poor attendance "for whatever reason" may not be offered overtime.  [Docket No. 68, Jennings Depo. at 155-56.]  Ryan likewise told Newton "he wasn't going to reward his people by letting them work overtime when they did not show up to work during the week."  [Docket No. 68, Newton Aff. at ¶ 11.]  Furthermore, on one Friday in the fall of 2005, Newton asked Ryan if any employees on Ryan's line were willing to

---

[3] As previously discussed, statements such as this do not constitute hearsay because they are made by a party opponent.  In this instance, the statement made by Jerrell was in her capacity as Area Manager and the statement made by Durbin recounting the statement of Jerrell was in his capacity as supervisor.

work that weekend, and Ryan said no one was available; Newton later asked Plaintiff if Ryan had asked him if he was available to work overtime, and Plaintiff said Ryan had not. [*Id*. at ¶ 12.]

Likewise, Sims testified that Ryan had told him he had been directed to make sure Plaintiff did not get overtime, and Ryan asked Sims for suggestions as to how to accomplish this task. Sims testified that later Ryan told Sims what he was going to say if another supervisor asked if Plaintiff was available to work on the weekend: "Don't tell anyone, but I'm going to tell them the next time I only have X amount of people that want to work above Duane Jennings." [Docket No. 68, Sims Dep. at 38.] This statement is referring to a list of employees with overtime that a supervisor must consult when determining who should be asked to work overtime. [*Id*.] Ryan bragged to Sims that he went down the list and called everyone to ask if they wanted overtime, but he only let the phone ring twice. Sims understood that Ryan did this to make sure that Sims was offered overtime instead of Plaintiff by creating a record that Ryan had asked Plaintiff if he wanted overtime without actually asking him.[4] Sims also testified that there were times when he worked overtime for the line on which he and Plaintiff worked and that Plaintiff was not there but employees from other lines were. [*Id*. at 42.]

Both parties rely on the Daily Reports of Time ("DROT Reports") as evidence in this case. However, they disagree about how these reports are best summarized. Because both

---

[4] This conclusion by Sims' is not merely improper speculation. Given the other evidence in the record—particularly Ryan's statement that he only let the phone ring twice, the conversation between Ryan and Sims about how Ryan might ensure that Plaintiff was not offered overtime, and the unwritten code of confidence between Ryan and Sims, who were both Masons—the inference drawn by Sims that Ryan was attempting to circumvent the rules against Plaintiff and in favor of Sims is reasonable, particularly at the summary judgment stage.

parties rely on the reports, and Plaintiff contends that "the DROT Reports speak for themselves" [Docket No. 67 at 4], set forth below is a summary of the DROT reports, using the FMLA request forms in the record for guidance and authority.

The DROT reports together with the FMLA forms indicate that Plaintiff took FMLA leave on twenty-two days during the period October 1, 2005 – March 26, 2006.[5] According to the testimony of supervisor Durbin, when filling out a form recording the absences of an employee, the code "Y" is used to indicate that an employee was verbally asked to work overtime but refused (and thus that time would be charged to the employee). [Docket No. 68, Durbin Depo. at 14-18.] A summary of absences report from 1/2/05 – 1/7/07 indicates that Plaintiff refused to work overtime hours on 10/10/05 and 10/19/05. [*See* Docket No. 68, Ex. 2 from Durbin Depo.] The DROT Report indicates that Plaintiff was on FMLA leave on both of these days.

The DROT reports in conjunction with the FMLA forms also provide information on the relationship between weekdays Plaintiff used FMLA leave and weekends in which Plaintiff

---

[5] The FMLA forms appear more accurate than the DROT Reports, which correctly mark some of the FMLA leave, but which mark some of the FMLA leave as unexcused absence, unpaid voluntary early out, or union leave. Based primarily on the FMLA forms, the dates Plaintiff took FMLA leave from October 2005 through March 2006 are: 10/10/05, 10/11/05, 10/19/05, 11/18/05, 11/23/05, 11/29/05, 12/1/05, 12/2/05, 12/8/05, 1/5/06, 1/6/06, 1/9/06, 1/10/06, 1/23/06, 2/1/06, 2/2/06, 2/3/06, 2/10/06, 3/1/06, 3/2/06, 3/8/06, and 3/21/06. [Docket No. 59, Exs. 6, 8.]

Plaintiff actually provides dates from August 2005 through December 2005. While such dates may ultimately be relevant to contextualize the case, for liability purposes, the time period for considering how Plaintiff was treated by Defendants begins October 1, 2005, because Plaintiff stipulated for dismissal all claims against Ford and ACH that pre-date October 1, 2005. [Docket No. 54 at ¶ 2.]

worked overtime for the twenty-five work weeks from October 1, 2005 – March 26, 2006.[6] In twelve of these twenty-five weeks no one from the department worked overtime. In three of the weeks, all occurring in March of 2006, Plaintiff was given weekend overtime hours after taking FMLA leave during the week. In three of the weeks, all occurring between December 2005 and January 2006, Plaintiff took FMLA leave during the week and did not work weekend overtime hours, but others in the department did. In five of the weeks, Plaintiff did not take FMLA leave during the week and worked weekend overtime hours. And in two of the weeks, Plaintiff did not use FMLA and did not work weekend overtime, but others in the department did. A more specific summary of this information is shown in Figure 1.

## Summary of Plaintiff's FMLA Leave and Weekend Overtime

|  | # of Weeks | Weeks Ending |
|---|---|---|
| No one from Plaintiff's department given weekend overtime | 12 | 10/16/05, 10/23/05, 10/30/05, 11/13/05, 11/20/05, 11/27/05, 12/4/05, 12/25/05, 1/15/06, 1/22/06, 2/5/06, 2/12/06 |
| Plaintiff used FMLA and worked weekend overtime | 3 | 3/5/06, 3/12/06, 3/26/06 |
| Plaintiff used FMLA and did not work weekend overtime, but others did | 3 | 12/11/2005, 1/8/06, 1/29/2006 |
| Plaintiff did not use FMLA and worked weekend overtime | 5 | 10/9/05, 12/18/05, 2/19/06, 2/26/06, 3/19/06 |
| Plaintiff did not use FMLA and did not work weekend overtime, but others did | 2 | 10/2/05, 11/6/05 |

**Figure 1.**

---

[6] The week of December 26, 2005 – January 1, 2006, which everyone had off, is not included in this summary.

In addition to the reports summarized above, Defendants also provide three "Employee Overtime Record" reports for the weeks ending December 11, 2005, January 8, 2006, and January 29, 2006.  These reports show that for these three weeks, Plaintiff had accumulated more overtime hours than anyone else in his department, which according to the local agreements would mean that he would be the last person in his department to be asked to work overtime hours.  [Docket No. 59, Ex. 9.]

**IV.   Discussion.**

Plaintiff claims that Defendants interfered with his rights under the FMLA and retaliated against him for taking FMLA leave by denying him overtime for exercising his rights under the FMLA.  [Docket No. 33 at ¶ 8.]  Defendants argue that they are entitled to summary judgment as to both Plaintiff's interference and retaliation claims.

**A.   Interference Claim.**

Defendants' sole argument regarding Plaintiff's interference claim is that Plaintiff acknowledged that he was given all the FMLA leave to which he is entitled, and therefore Plaintiff concedes that Defendants have not interfered with his FMLA rights.  According to 29 U.S.C. § 2615(a)(1), it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."  In order to prevail on an interference claim,

> the employee must establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.

*Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (citing *Hoge v. Honda of Am. Mfg.*, 384 F.3d 238, 244 (6th Cir. 2004)).  Accordingly, the only factor Defendants question in their motion

for summary judgment is the fifth factor.

In addition to these factors, the regulations provide some guidance. In particular, the regulations advise that an employer is "interfering with" FMLA rights by "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. 825.220(b). The fifth factor applied in *Burnett*, which requires that the employer have denied the FMLA benefits to which the employee was entitled, seems to somewhat conflict with the regulatory definition of "interfering with," which includes not only the denial of FMLA leave but also the discouragement of such leave.

However, this discrepancy is resolved by understanding the issues involved in *Burnett* in conjunction with law the as outlined in *Hoge*, the Sixth Circuit case from which the five factors in *Burnett* were derived. In *Burnett* the fifth element was not in question. *See Burnett*, 472 F.3d at 477 ("We easily conclude that Burnett has satisfied the third and fifth elements of an interference claim.") Additionally, the Sixth Circuit in *Hoge* provides a more inclusive description of the fifth element: "[the defendant] denied [the employee] FMLA benefits *or interfered with* FMLA rights to which [the employee] was entitled." *Hoge*, 384 F.3d at 244 (emphasis added). There is no indication that the Seventh Circuit in *Burnett* intended to make the fifth factor—which was not in question in that case—more stringent than was depicted by the Sixth Circuit. Nor is there any indication that the Seventh Circuit intended to adopt any interpretation of the ambiguous phrase "interfering with" that might differ from the interpretation given by the agency. *See Fed. Express Corp. v. Holowecki*, 128 S. Ct. 1147, 1154 (2008) ("The agency has statutory authority to issue regulations . . . and when an agency invokes its authority to issue regulations, which then interpret ambiguous statutory terms, the courts defer to its

reasonable interpretations."). Thus, the Seventh Circuit would presumably conclude that as to the fifth factor the plaintiff must show either the flat denial of FMLA benefits or the interference or discouragement of his FMLA rights.

Defendants acknowledge this regulatory provision defining "interfering with" to include "discouraging an employee from using such leave," [*see* Docket No. 73 at 3], but nonetheless maintain, without further explanation, that "Jennings cannot state an FMLA interference claim because he concedes that he received all of the FMLA leave to which he was entitled." [Docket No. 73.] What Defendants seem to be arguing is that because Plaintiff was given the full extent of the FMLA leave approved by his doctor, Defendants therefore did not interfere with Plaintiff's FMLA rights. This argument, however, fails to address the regulation's definition of "interfering with" to include "discouraging." While Defendants did not refuse to authorize FMLA leave for Plaintiff, nor *successfully* discourage him from taking that to which he was entitled, 29 C.F.R. 825.220(b) does not suggest that the employer needs to be successful in its discouragement in order for the employer to be interfering. The employer just needs to have discouraged the employee from taking the leave. Evidence that supervisor Ryan told Plaintiff's line in weekly meetings that departments with poor attendance, including for FMLA, may not be offered overtime sufficiently establishes for summary judgment purposes that Defendants discouraged Plaintiff from taking FMLA leave. This evidence is further supported by evidence discussed below that is more relevant to Plaintiff's retaliation claim. Thus, Defendants—whose sole argument on this claim pertains to this fifth factor—have failed to demonstrate that there is no material issue of fact on whether they interfered with Plaintiff's FMLA rights.

**B.     Retaliation Claim.**

In addition to prohibiting interference with FMLA leave, the FMLA also prohibits retaliation by an employer against an employee for exercising his rights under the Act. *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008). Plaintiff can avoid summary judgment on his retaliation claim using either the "direct method" or the "indirect method." *Id.* Under the direct method, Plaintiff must proffer "direct or circumstantial evidence of [his] employer's discriminatory motivation." *Id*. Under the indirect method, Plaintiff must establish that upon taking FMLA "he was treated less favorably than other similarly situated employees who did not take FMLA leave, even though he was performing his job in a satisfactory manner." *Burnett*, 472 F.3d at 481-82 (quoting *Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 951 (7th Cir. 2006)).

Defendants argue that Plaintiff's evidence does not support a triable retaliation issue under either the direct method or the indirect method. Plaintiff responds that the circumstantial evidence he provides, if believed by a jury, would prove under the direct method that Defendants retaliated against him in violation of the FMLA.

Plaintiff has provided evidence that Ryan had been given a directive by his boss Jerrell to discourage employees from taking time off during the week, including FMLA leave. The evidence also provides a basis for believing that Jerrell intentionally disregarded the suggestion of two supervisors that this directive violated the FMLA, and that Jerrell was upset with one supervisor for not "writ[ing] someone up" for taking FMLA leave and for allowing that person to work weekend overtime hours. [Docket No. 68, Sims Depo. at 30-31.] Finally, Plaintiff has provided evidence that Ryan claimed he would not reward his employees with overtime when they had not shown up during the week, even if the reason was FMLA leave, and that Ryan

specifically targeted Plaintiff for refusal of overtime.

Defendants try to minimize the evidence pertaining to Jerrell's directive by indicating that "Jerrell is not responsible for offering and scheduling weekend overtime at the Plant," but rather the supervisors are. [*See* Docket No. 60 at 8.] Therefore, Defendants argue that Jerrell's directive was nothing more than an "isolated stray remark," which is insufficient to establish discriminatory intent under the direct method. [*Id*. at 13.] Defendants further argue that the reason Plaintiff did not receive overtime was the local agreements, not some directive by Jerrell. As to the alleged statements attributed to Ryan, Defendants only argue that they are inadmissible. [Docket No. 73 at 4-6.]

As discussed above, the statements allegedly made by Ryan, as well as those made by Jerrell, are admissible as statements of a party opponent. While Jerrell may not have been the person offering and scheduling weekend overtime, the supervisors who were responsible for accomplishing this task presumably had some obligation to do so in the manner requested by Jerrell, their superior. Furthermore, Plaintiff offered evidence that supervisor Ryan expressed intent to fulfill Jerrell's request despite the FMLA and the restraints of the local agreements, which suggests that Jerrell's directive was not an "isolated stray remark." Rather, this evidence provides a basis that the alleged directive by Jerrell may have been effectuated through Ryan. Therefore, this evidence raises a triable issue on whether Defendants retaliated against Plaintiff by denying him overtime hours for taking FMLA leave.

Defendants also argue that Plaintiff was not treated worse than non-protected employees on Plaintiff's line, pointing out that other employees who did not take FMLA were not assigned weekend overtime. [Docket No. 60 at 15.] To the extent that Defendants are correct about

Plaintiff's treatment as compared to others in his department, this point is undermined by evidence that Plaintiff's whole department may have been overlooked to some extent because of FMLA leave that Plaintiff, and possibly others, took. For example, the directive by Jerrell was to deprive whole departments of weekend overtime hours if the employees in that department did not work during the week, for whatever reason, including FMLA leave. And supervisor Newton attested that he recalls always needing weekend overtime help from other departments from August 2005 through December 2005, but the DROT Reports indicate that on eight weekends between October 2005 and December 2005, no one from Plaintiff's department worked weekend overtime hours. Furthermore, Newton attests that on one occasion supervisor Ryan misled Newton regarding the availability of Plaintiff's department for weekend overtime hours. Thus, the value of comparing Plaintiff's treatment only with other employees in his department may be limited.

Both Defendants and Plaintiff point to the DROT Reports in support of their positions. For example, Defendants point out that Plaintiff was assigned overtime every week in March, despite having taken thirty-two hours of approved FMLA leave. [Docket No. 60 at 15-16.] On the other hand, Plaintiff points out that between October 2005 and December 2005,[7] the duration of Ryan's time as Plaintiff's supervisor, Plaintiff was never offered weekend overtime during weeks in which he took FMLA leave.[8] [Docket No. 67 at 15 n.13.]

---

[7] Plaintiff actually uses the dates of August 2005 through December 2005, but see *supra* note 2.

[8] Defendants make much of the fact that Plaintiff testified that he was never assigned to weekend overtime between October 1, 2005, through March 2006, but now Plaintiff focuses on September 2005 through December 2005, most likely because the DROT Reports establish that in March 2006 Plaintiff worked overtime on several weekends. [Docket No. 73 at 7-8.] These

The DROT Reports indicate that for three weekends in December and January Plaintiff took FMLA leave and did not work weekend overtime, but others from his department did. Defendants point out that Plaintiff had the highest number of overtime hours during these three weeks, so he would have been the last in the department asked to work overtime. However, Sims testified that there were weekends that he worked overtime hours with employees from other departments, possibly suggesting that these overtime hours were given out of turn to employees in other departments rather than to Plaintiff. While Plaintiff acknowledges that the opportunities to which Sims referred were likely denied to Plaintiff prior to October 2005, [Docket 67 at 18 n.6], the DROT Reports indicate that two of the three weekends in question—1/8/06 and 1/29/06—Sims worked, but Plaintiff did not. Thus, it is possible that the scenario suggested by Sims occurred during the relevant time period. Furthermore, supervisor Newton needed overtime help for at least the weekend in December, so overtime hours should have been available for Plaintiff in another department that weekend. In sum, the fact that Plaintiff had the highest number of overtime hours for those weekends does not conclusively indicate that Plaintiff had not been entitled to work overtime hours those weekends.

Likewise, of the seven weekends that overtime was given to Plaintiff's department and Plaintiff had not taken FMLA leave during the week, Plaintiff was given weekend overtime hours for five of them, which tends to support the problematic pattern Plaintiff suggests. And, as Plaintiff points out, the fact remains that from October through December 2005—the duration of Ryan's tenure as Plaintiff's supervisor—Plaintiff was never given weekend overtime hours

---

facts certainly demonstrate a discrepancy in Plaintiff's position. However, this inconsistency does not provide a basis to grant summary judgment for Defendants.

during weeks in which he took FMLA leave.

Plaintiff also contends that Defendants punished him by charging him for hours he refused to work on days when he took FMLA leave.  Plaintiff's contention is not without merit.  Based on the testimony of supervisor Durbin, together with Exhibit 2 from his deposition and the DROT Reports, it appears that Plaintiff was charged overtime hours on two days during which he took FMLA leave.  While this fact alone does not demonstrate discriminatory motivation, it is undisputed evidence that points in that direction.

As discussed above, in addition to this undisputed evidence regarding the absence report, Plaintiff has also offered disputed evidence of statements made by Jerrell and Ryan.  These statements, together with the DROT Reports and the absence report, provide sufficient circumstantial evidence of retaliation by Defendants for the FMLA leave Plaintiff took during the last months of 2005 and possibly the first few months of 2006.  Therefore, summary judgment on Plaintiff's retaliation claim is inappropriate.

**V.     Conclusion.**

For the above reasons, the Magistrate Judge recommends that Defendants' motion for summary judgment [Docket No. 59] be denied.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections within the ten days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:   08/15/2008

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Sneha Channabasappa
WALLER LANSDEN DORTCH & DAVIS LLP
sneha.channabasappa@wallerlaw.com

Stanley E. Graham
WALLER LANSDEN DORTCH & DAVIS PLLC
stan.graham@wallerlaw.com

Raymond J. Hafsten Jr.
hafsten@sbcglobal.net

Kenneth E. Lauter
HASKIN LAUTER & LARUE
klauter@hlllaw.com

Christopher S. Wolcott
HASKIN LAUTER & LARUE
cwolcott@hlllaw.com